# United States District Court, Northern District of Illinois

ORIGINA

| Name of Assigned Judge or Magistrate Judge | Morton Denlow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 8542 | **DATE** | 5/2/2002 |
| **CASE TITLE** | RKI, Inc. vs. Steven Grimes and Chicago Roll Co.,Inc. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendants' motions for new trial [29-1, 38-1] or to alter or amend judgment [29-2, 38-2, 38-3] pursuant to Federal Rule of Civil Procedure 29 and 52(b) are denied. Futhermore, the Court upholds its prior ruling in this case, except that the Court vacates its award of punitive damages on the breach of contract claim in count four against Steven Grimes. This does not require a change in the Judgment Order because Grimes is still liable for punitive damages under counts one, two and three.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | **Document Number** |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | |
| | No notices required. | | number of notices | | |
| ✓ | Notices mailed by judge's staff. | | IS | | 69 |
| | Notified counsel by telephone. | | date docketed | | |
| | Docketing to mail notices. | | MAY - 3 2002 | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | 5/1/2002 | | |
| | | 02 MAY -2 PM 4:58 | date mailed notice | | |
| DK | courtroom deputy's initials | | DK | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

DOCKETED
MAY - 3 2002

| | | |
|---|---|---|
| **RKI, INC., d/b/a ROLL-KRAFT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 01 C 8542** |
| **v.** | ) | |
| | ) | |
| **STEVEN GRIMES and CHICAGO** | ) | |
| **ROLL CO., INC.,** | ) | **Magistrate Judge Morton Denlow** |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Following a four day bench trial, this Court entered a Memorandum Opinion and Order ("Opinion") finding in favor of Plaintiffs RKI, Inc., d/b/a Roll-Kraft ("Roll-Kraft") on all five counts of its complaint against Defendants Steven Grimes ("Grimes") and Chicago Roll Company, Inc. ("Chicago Roll") (collectively "Defendants"). *RKI, Inc. v. Grimes*, 177 F.Supp.2d 859 (N.D.Ill. 2001). Grimes and Chicago Roll have now each filed a Motion for New Trial or to Alter or Amend Judgment Pursuant to Federal Rules of Civil Procedure 52(b) and 59. For the following reasons, Defendants' motions are denied.

## I. BACKGROUND FACTS[1]

This Court conducted a bench trial on December 17 - 19, 2001, and heard closing arguments on December 20, 2001, in connection with the complaint Roll-Kraft brought

---

[1] This section encompasses a summary of the underlying facts in this case. A more complete version of the facts is located in this Court's Opinion in this case dated Dec. 21, 2001. *RKI, Inc. v. Grimes*, 177 F.Supp.2d 859 (N.D.Ill. 2001).

against Grimes and Chicago Roll. Roll-Kraft asserted five causes of action: (1) violation of the Illinois Trade Secrets Act, 765 ILCS 1065/1 et seq.; (2) conversion; (3) breach of the duty of loyalty owed by an employee; (4) breach of the nondisclosure and non-solicitation covenants; and (5) tortious interference with contract. Count 1 sought relief against Grimes and Chicago Roll; Counts 2, 3 and 4 sought relief against Grimes; and Count 5 was directed against Chicago Roll. This Court found in favor of Roll-Kraft on all five counts and awarded Roll-Kraft a permanent injunction, a total of $100,000 in compensatory damages, and a total of $150,000 in punitive damages against both Defendants.

## II. ANALYSIS

Defendants' post-trial motions raise questions regarding the liability and damages components of the December 21, 2001 decision. At oral argument, both Chicago Roll and Grimes withdrew their claims of judicial bias and withdrew their objections to the injunction. Therefore, this Court will only address the liability and monetary damages issues raised by the post-trial motions. This opinion is intended to supplement the Court's earlier Opinion and not to replace it.

### A.    Post-Trial Motions Standard

Defendants request a new trial or to alter or amend judgment pursuant to FRCP 52(b) and 59. FRCP 52(b) provides in part:

> On a party's motion filed no later than 10 days after entry of judgment, the court may amend its findings – or make additional findings – and may amend the judgment accordingly. The motion may accompany a motion for a new trial under Rule 59.

Fed. R. Civ. Pro. 52(b). FRCP 59 provides in pertinent part:

> (a) Grounds. A new trial may be granted to all or any of the parties and on all or part of the issues ... in an action tried without a jury, for any of the reasons for which rehearings have heretofore been granted in suits in equity in the courts of the United States ... the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment.
>
> (e) Motion to Alter or Amend Judgment. Any motion to alter or amend a judgment shall be filed no later than 10 days after entry of the judgment.

Fed. R. Civ. Pro. 59.

Post-trial motions serve the limited function of correcting manifest errors of law or fact or presenting newly discovered evidence. *Keene Corp. v. International Fidelity Ins. Co.*, 561 F.Supp. 656, 665 (N.D.Ill. 1983), *aff'd*, 736 F.2d 388 (7th Cir. 1984). Such motions are not vehicles to introduce new evidence that could have been presented at trial. *Id*. Nor are they intended to serve as an opportunity to tender new legal theories for the first time. *Id*. at 666.

Rather, the motion to reconsider is appropriate where the Court has patently misunderstood a party, made a decision outside the issues presented to the Court, or made an error not of reasoning but of apprehension. *Refrigeration Sales Co., Inc. v. Mitchell-Jackson, Inc.*, 605 F.Supp. 6, 7 (N.D.Ill. 1983). A controlling or significant change in the law or facts since the issue was submitted to the Court is a further basis for the motion; however, "such problems rarely arise and the motion to reconsider should be equally rare." *Id*. To support such a motion based on newly discovered evidence, the moving party must "show not only that this evidence was newly discovered or unknown to it until after the

hearing, but also that it could not with reasonable diligence have discovered and produced such evidence [during the pendency of the motion]." *Caisse Nationale De Credit Agricole v. CBI Industries, Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996).

A motion for reconsideration is not a tool by which a losing party may retry its case. *Refrigeration Sales Co., Inc.*, 605 F.Supp. at 9. Each party is entitled to only one bite at the apple. *Id.* Therefore, a party failing to present evidentiary matters during trial is bound by that trial strategy. *Id.* at 8. If evidence is available to a party at the time of trial, the party is obligated to make those arguments at that time; failure to do so waives the party's right to do so later in a motion for reconsideration. *Publishers Resource, Inc., v. Walker-Davis Publications, Inc.*, 762 F.2d 557, 561 (7th Cir. 1985). Furthermore, intentionally withholding facts for post-trial motions is flatly prohibited. *Caisse Nationale De Credit Agricole*, 90 F.3d at 1270.

In this case, Defendants chose to rest their case without presenting any evidence. After hearing this, the Court expressed its concerns to defense counsel and allowed a recess so defense counsel could again discuss this strategy with his clients. Tr. 571-73. After the recess, Defendants reiterated their decision to rest without presenting any evidence. Tr. 573. As the law proscribes, Defendants had their bite at the apple and cannot now ask to put on evidence available to them at the time of trial. Therefore, Defendants' Motions for a New Trial are denied.

**B.  Liability Issues**

**1. Illinois Trade Secret Act Claim**

In the Opinion, this Court thoroughly addressed the Illinois Trade Secrets Act violations by Grimes and Chicago Roll in paragraphs 11-16, 24-32, 36-44, and 62 – 75. *RKI, Inc.*, 177 F.Supp.2d at 865-867, 868-871, 873-877. Therefore, this Court will only address the new concerns of Defendants.

First, Chicago Roll claims the Court failed to differentiate between Grimes' and Chicago Roll's misappropriation of Roll-Kraft's trade secrets. The Court did address each Defendant separately when discussing the misappropriation of Roll-Kraft's trade secrets; Grimes' misappropriation was discussed in paragraphs 24-32, 36-44, and 70 and Chicago Roll's misappropriation was discussed in paragraphs 42-43 and 71. *Id.* at 868-871, 875. The Court did address the Defendants together in paragraph 72 while discussing the inevitable use of the misappropriated Roll-Kraft trade secret information; however, within that paragraph, the Court did explain Grimes' role and Chicago Roll's participation separately. *Id.* at 875-876.

This Court stands by its ruling finding Grimes violated the Illinois Trade Secrets Act. Grimes asserts the finding of misappropriation against him was based only on his access to Roll-Kraft's computers on the evening of October 16, 2001 and the defragmentation of his computer four times between November 15 and 24, 2001. Grimes is mistaken. In addition to the George Tracy deposition testimony in which Grimes admitted taking information from

Roll-Kraft and diverting business from Roll-Kraft (Tracy Dep. 10-13, 17-20, 23-24, 28-29, 42-45) and the David Methvin of PCPitstop deposition testimony stating PCPitstop never told Grimes to defragment his computer (Methvin Dep. 20-23), this Court can now point to specific pages in the record to further substantiate its ruling.[2] Grimes deleted 60 megabytes of data, equaling 29,297 pages of text, from his home computer between November 15, 2001 and December 8, 2001 while his computer was being inspected by computer forensics expert Jerry Saperstein. Tr.419-445. Grimes' home computer was also defragmented four times in ten days despite a lack of mechanical or engineering reason requiring it. Tr. 434-435, 445-446. Saperstein explained finding no deletions coupled with defragmentation raises a red flag of eliminating data or concealing electronic data. Tr. 430-431, 445. Furthermore, Saperstein found data belonging to Roll-Kraft on Grimes' home computer. Tr. 446-468; PX 21-23.

This Court also stands by its ruling that Chicago Roll misappropriated Roll-Kraft's trade secrets and violated the Illinois Trade Secrets Act. Chicago Roll claims there is no evidence that it is liable for misappropriation of Roll-Kraft's trade secrets. The Court disagrees. This Court previously found the direct evidence supplied by Tracy and Saperstein was enough to warrant a finding of misappropriation, however, continued its inquiry and also found strong circumstantial evidence against Chicago Roll. *RKI, Inc.*, 177 F.Supp.2d at 870-

---

[2] Because of the nature of the claims in this case, this Court expedited its ruling and therefore did not have the benefit of the transcript at the time the ruling was made on December 21, 2001.

6

71, 875-77. Once again, this Court now has the benefit of the transcript to point to the direct and circumstantial evidence of misappropriation by Chicago Roll.

First, Chicago Roll is liable for misappropriation based on this Court's finding that Grimes used the trade secrets while employed by Chicago Roll. *See C & F Packing Co., Inc. v. IBP, Inc. and Pizza Hut, Inc.*, 1998 WL 1147139 *7 (N.D.Ill. 1998) (noting an employer may be held liable for misappropriation of a trade secret as a consequence of hiring a competitor's employee and placing the employee in a position resulting in the inevitable disclosure or use of the trade secret). Such a finding is appropriate because Chicago Roll hired Grimes, the employee of a competitor, who knew Roll-Kraft's trade secrets and placed Grimes in a job with similar or identical duties to those performed while working for the competitor. *Id.*; Tr. 335, 543-45; PX 7[3]. Furthermore, Grimes used the Roll-Kraft data to "steal" customers away from Roll-Kraft, such as Bull Moose, Copper Weld, and Welded Tube of America. Tracy Dep. 11, 17, 18, 29, 42-45, 47; Tr. 543-45.

Moreover, data was deleted from the computers of Chicago Roll's vice president of sales, Robert Manos, and two of its salesmen, Mike McGinn and Wally Mullen on October 15, 2002 when no deletions occurred prior to that date. Tr. 410-411. The deletions ran forward to late October and in one or two cases, early November. Tr. 411. Saperstein testified the entire "My Documents" folder and the "Documents and Settings" folder of

---

[3] PX 7 is a letter from Chicago Roll's Vice President of Sales & Service, Robert Manos, dated October 5, 2001 to Grimes outlining Grimes' territory for Chicago Roll as "Basically the same territory as you have been developing Illinois, Indiana, Wisconsin and Iowa."

McGinn's computer was created on October 26, 2001, despite the computer being placed in service prior to that date. Tr. 411-15. Saperstein found it "very surprising that the Documents and setting folders and the My Documents folders were created on 10/26/01." Tr. 412.

McGinn's computer was also defragmented on December 6, 2001, just two days before Saperstein inspected it, preventing Saperstein from determining what had been deleted. Tr. 414-17. Saperstein explained defragmentation is a "red flag" indicating a possible deliberate attempt to conceal evidence of electronic data. Tr. 420-21, 430.

This Court, as it addressed in the Opinion, again points out the third factor to determine whether disclosure of trade secrets is inevitable is the actions the new employer has taken to prevent the former employee from using or disclosing trade secrets of the former employer. *PepsiCo v. Redmond*, 1996 WL 3965 *17-20 (N.D.Ill. 1996). Chicago Roll put Grimes in a position to use Roll-Kraft's trade secrets against Roll-Kraft in light of the letter from Manos to Grimes dated October 5, 2001 (approximately two weeks prior to Grimes' resignation from Roll-Kraft) which blatantly states Grimes will cover the same territory for Chicago Roll as he did for Roll-Kraft. PX 7.

Because direct evidence of misappropriation of trade secrets is typically not available, a plaintiff can rely on circumstantial evidence to prove misappropriation. *Id.* at 15. In this case, Roll-Kraft constructed a web of circumstantial evidence from which this Court drew inferences, convinced it was more probable than not what Roll-Kraft alleged happened did

in fact take place. *Id.* Therefore, the Court's ruling stands that Chicago Roll violated the Illinois Trade Secrets Act by misappropriating Roll-Kraft's trade secrets.

Lastly, Chicago Roll argues no reason existed for Grimes to share his misappropriated information with competing salesman. The Court does not agree. This Court previously held Grimes stole the ACT, BAM and NPI systems. These systems contain data covering the entire United States, not just the territory to which Grimes was assigned. Tr. 80-81, 86-94, 97-98, 103-04; PX 16a - 16j. Thus, the data was valuable to all of Chicago Roll's sales personnel. Chicago Roll assigned its salesmen to different territories, so Grimes had no disincentive for sharing the data with his colleagues. PX. 7.

### 2. Breach of Contract Claim

Grimes asserts Roll-Kraft failed to prove all the necessary elements of breach of contract. The breach of contract claim was addressed by this Court in paragraphs 5-10, 17-23, 48-55, and 88 of the Opinion. *RKI, Inc.*, 177 F.Supp.2d at 863-65, 867-68, 871-72, 879. This Court reiterates its finding that the employment agreement was not terminated because Roll-Kraft had the right to reduce Grimes' compensation under the contract. Tr. 120, 123-27, 132-37, 152-57, 163, 223-24, 280-84, 286, 539. Additionally, because Grimes failed to produce any evidence he was not paid properly, his affirmative defense fails.

### 3. Conversion Claim

Grimes also argues Roll-Kraft failed to prove the required elements of conversion. This Court addressed Grimes' conversion of Roll-Kraft's property in paragraphs 24-25 and

76-77 of the Opinion. *RKI, Inc.*, 177 F.Supp.2d at 868, 877. This Court reiterates its ruling in paragraphs 76 and 77 and offers the following additional information for purposes of incorporating direct evidence via the transcript into the ruling. Roll-Kraft is the lawful owner of the ACT, BAM, and NPI information and is entitled to possession of such information. Tr. 79-94, 97-98, 100, 108-110. Grimes is mistaken in his belief that no demand for proprietary information was made upon him by Roll-Kraft before suit was instituted. Paragraph 6(d) of Grimes' Employment Agreement with Roll-Kraft required Grimes to return all Roll-Kraft property upon termination of employment. PX 1, ¶ 6(d), Tr. 111-115, 140-144. Also, the day after Grimes' resignation from Roll-Kraft, Roll-Kraft's attorneys sent Grimes a letter demanding compliance with his Employment Agreement. PX 6, Tr. 162-64.

### 4. Breach of Duty of Loyalty Claim

Grimes also claims Roll-Kraft failed to prove all the elements needed for breach of loyalty. This Court stands by its ruling that Grimes breached his duty of loyalty to Roll-Kraft. *RKI, Inc.*, 177 F.Supp.2d at 868, 877.

### 5. Tortious Interference with Contract Claim

The Court addressed this claim in paragraphs 45-47 and 86-87 of its Opinion. *Id.* at 871, 878-79. Under Illinois law, the elements for a cause of action for tortious interference with contract are: 1) a valid contract, 2) defendant's knowledge of the existence of the contract, 3) defendant's intentional and malicious inducement of the breach of contract, 4) breach of contract caused by defendant's wrongful conduct, and 5) resultant damage to the

plaintiff. *George A. Fuller Co. v. Chicago College of Osteopathic Medicine*, 719 F.2d 1326, 1330 (7th Cir. 1983). Chicago Roll admits elements one and two, but disputes elements three, four, and five.

Element three requires defendant's intentional and malicious inducement of the breach of contract. *Id.* Malice does not require ill will, hostility, or an intent to injure; but rather, a plaintiff need only assert defendant acted "intentionally and without just cause." *Id.* at 1332. In Illinois, just cause is determined using a balancing test taking into account the "rationale for imposing tort liability upon persons interfering with the contractual relations of others – protection of contractual relations against legally repugnant forms of interference." *Id.* The test for inducement "requires an intention on the part of the actor to interfere with another's contractual relations. To do so, he must know of the existence of the contract with which he interferes ..." *In re Douglas Dunhill, Inc.*, 22 B.R. 953, 956 (Bankr. N.D.Ill. 1982). Furthermore, any conduct conveying to the third person the actor's desire to influence him not to deal with the other may be inducement. *Id.* at 957. However, the Restatement of Torts, 2d § 766 states:

> One does not induce another to commit a breach of contract with a third person under the rules stated in this section when he merely enters into an agreement with the other with the knowledge that the other cannot perform both it and his contract with the third person.

*Id.*

Chicago Roll intentionally and maliciously induced Grimes to breach his employment agreement with Roll-Kraft. Chicago Roll knew about and read Grimes' employment

11

agreement with Roll-Kraft and Chicago Roll was so concerned their hiring Grimes would breach the contract they even had Grimes sign an employment agreement consisting of an indemnity agreement to protect themselves in the event Roll-Kraft initiated legal action against it. PX 8. Despite knowing about the employment agreement, Chicago Roll hired Grimes in a sales position and compensated him (at a higher salary than he was earning at Roll-Kraft) to directly compete against Roll-Kraft, including calling on his Roll-Kraft customers. PX 7, 8, 11b, 11c, 11e, 11f, 11g, 11i; Tracy Dep. 11, 17, 18, 29, 42-45, 47; Tr. 543-45. This calculated risk constituted a conscious disregard of the rights of Roll-Kraft. Additionally, in finding Chicago Roll violated the Illinois Trade Secrets Act, Chicago Roll encouraged and accepted the receipt, disclosure, and use of Roll-Kraft's confidential information. *Id.*

In balancing the protection of contractual relations against legally repugnant forms of interference, this Court finds Chicago Roll acted intentionally and without just cause. If Chicago Roll was so concerned about the legal ramifications of breaching Grimes' employment agreement with Roll-Kraft, it should have filed a declaratory judgment action or requested Grimes to do so before hiring him. When questioned about this at oral argument, Chicago Roll's counsel responded these are blue collar guys who work with their hands. Oral Arg. Tr. 24-25. However, working with ones' hands is no excuse for ignoring the rights of others. And that is precisely what Chicago Roll did by intentionally ignoring Grimes' employment agreement and hiring Grimes to solicit Roll-Kraft's customers. PX 7.

Therefore, Chicago Roll's actions amount to the intentional and malicious inducement of the breach of contract.

Element four is breach of contract caused by defendant's wrongful conduct. As this Court discussed *supra*, Grimes' employment agreement with Roll-Kraft was in fact breached and was caused by defendant's wrongful conduct. Therefore, element four was satisfied.

The last element required for tortious interference with contract is damage to the plaintiff. Roll-Kraft's damages were discussed in paragraphs 89 and 90 of the Opinion. *RKI, Inc.*, 177 F.Supp.2d at 879-80. This Court stands by its ruling.

Because Chicago Roll intentionally and maliciously induced the breach of contract, this Court also looked to the time, effort, and expense Roll-Kraft underwent in developing Grimes and the Chicagoland area in assessing damages in the amount of $100,000 for this claim in paragraphs 10-14 of the Opinion. *Id.* at 865-866. In 1996, Roll-Kraft initially invested $200,000 to get Roll-Kraft Northern ("RKN"), the facility out of which Grimes worked, up and running. Tr. 159. Roll-Kraft spends $600,000 annually to keep RKN running. *Id.* In 1999, Grimes was hired as the primary salesperson for RKN. *Id.* Prior to his hiring by Roll-Kraft, Grimes had no experience in this field of business and no knowledge or familiarity with any of the customers in the sales territory to which he was assigned before being hired by Roll-Kraft. *Id.* at 126, 151. From 1999 through the date of his resignation, Roll-Kraft invested $239,781.81 in Grimes' development plus the expense of senior Roll-Kraft employees, managers, and engineers devoting their time to training

Grimes and flying to Chicago to help Grimes solidify business. *Id.* at 159-60; PX 30. Roll-Kraft reasonably expected Grimes to continue to produce sales and profits for the company. Lost business and the lost investment in a salesperson is difficult to measure, but does amount to actual damages. Therefore, Roll-Kraft is entitled to $100,000 in actual damages for tortious interference with contract. Roll-Kraft's damages are further discussed *infra* in the section titled "Damages Issues."

Chicago Roll tortiously interfered with Roll-Kraft's contract with Grimes. Chicago Roll's conduct was willful, intentional, and malicious.

## C.   Damages Issues

### 1. Compensatory Damages

Defendants argue the $100,000 in compensatory damages awarded to Roll-Kraft under the ITSA cannot stand because the permanent injunction coupled with an award based on a reasonable royalty of future damages is a double recovery and no evidence or a basis for a reasonable royalty was offered by Plaintiffs. This Court addressed and awarded damages to Roll-Kraft in paragraphs 89 and 90 of the Opinion. *Id.* Paragraph 89 explains ITSA sections three and four regarding injunctive relief, actual damages or a reasonable royalty, and exemplary damages. *Id.* Paragraph 90 applies the ITSA to the facts at hand and explains the compensatory and punitive damages award. *Id.*

This Court issued a permanent injunction against both Defendants and awarded damages resulting from the unauthorized use and disclosure by Defendants' of Roll-Kraft's

trade secrets. *Id*. at 879-81. This remedy fits within the remedies proscribed by the ITSA sections three and four. ITSA § 4 provides, "in addition to the relief provided in Section 3 [injunctive relief], a person is entitled to recover damages for misappropriation . . .." 765 ILCS 1065/4. The issuance of an injunction and the award of royalty damages is an appropriate remedy and was approved under other states' versions of the Uniform Trade Secrets Act. *See e.g. Sonoco Products Co. v. Johnson*, 23 P.3d 1287, 1290 (Colo.Ct.App. 2001) (affirming issuance of injunction and award of royalties "based on the development costs of the information misappropriated by defendants" under the Colorado Uniform Trade Secrets Act, which is similar to the ITSA).

This Court awarded a permanent injunction and a reasonable royalty based on Defendants' use of the misappropriated information *prior* to the issuance of the injunction. Defendants contention of a double recovery is therefore misplaced. Defendants' rely on *Home Pride Foods, Inc. v. Johnson*, 634 N.W.2d 774, 784 (Neb. 2001) and *Robert L. Cloud & Assoc., Inc. v. Walter R. Mikesell, Jr.*, 69 Cal.App.4th 1141, 1150-51 (1999) which ruled it is impermissible double recovery for a court to award damages for *future use* and, at the same time, issue a permanent injunction barring such use. These cases are distinguishable from the case at hand because this Court did not award any damages for future use of the misappropriated information, but rather only awarded damages for the use and disclosure of Roll-Kraft's trade secrets for the period before the injunction issued. *RKI, Inc.*, 177 F.Supp.2d at 880.

Defendants also claim Roll-Kraft offered no evidence or a basis for a reasonable royalty. Contrary to Defendants' belief, Roll-Kraft's counsel did claim damages in his closing argument and stated because Roll-Kraft obtained a TRO relatively quickly after Grimes went to work for Chicago Roll, Defendants "did not have much of an opportunity to misuse that information." Tr. 585-86, 615.

This Court stands by its ruling that Roll-Kraft did suffer damages and further substantiates its Opinion with the following information. *RKI, Inc.*, 177 F.Supp.2d at 865-71, 873-77. The ITSA often recognizes in trade secrets cases, the plaintiff cannot prove its damages by showing lost profits. Because of that difficulty, section four of the ITSA provides in pertinent part "If neither damages nor unjust enrichment caused by the misappropriation are proved by a preponderance of the evidence, the court may award damages caused by misappropriation measured in terms of a reasonable royalty for a misappropriator's unauthorized disclosure or use of a trade secret." 765 ILCS 1065/4(a).

A reasonable royalty is "simply that amount which the trier of facts estimates a person desiring to use a patent right would be willing to pay for its use and a patent owner desiring to license the patent would be willing to accept." *Perdue Farms Inc. v. Hook*, 777 So.2d 1047, 1051-52 (Fla. Dist. Ct. App. 2001) (applying patent calculation of reasonable royalty to trade secret claims under Florida Uniform Trade Secrets Act, containing a damages provision worded identically to ITSA). Therefore, this Court assessed a reasonable royalty of $100,000 based upon the development costs and value of the trade secrets covering the

period from Defendants' disclosure and use of the secrets to the issuance of the temporary restraining order. This method of calculating a reasonable royalty was also approved by the court in *Sunoco*. 23 P.3d at 1290 (affirming reasonable royalty award based on development costs of the information misappropriated by the defendants under Colorado Uniform Trade Secrets Act, containing similar wording to the ITSA).

Roll-Kraft's President testified it took Roll-Kraft many years to develop the confidential information contained in the ACT, BAM, and NPI systems. Tr. 80-84, 100-01, 104. And furthermore, discussed why a competitor would gain an advantage over Roll-Kraft if the competitor had access to ACT, BAM, or NPI. Tr. 108-10, 115-17. Roll-Kraft's President also testified it cost millions of dollars to develop this information in conjunction with developing customers across the country. Tr. 162. During closing arguments, this Court estimated to Defendants' counsel that it probably cost Roll-Kraft millions of dollars to gather all this information, to which Defendants' counsel readily agreed by stating "And I don't dispute that." Tr. 640. Moreover, Joe Frandanisa, Roll-Kraft's Director of Sales, testified "we've even seen a loss of business from some of those companies since his [Grimes] leaving." Tr. 545. Chicago Roll hired Grimes in a sales position and compensated him to directly compete against Roll-Kraft, including calling on the same customers he had just called upon for Roll-Kraft. PX 7, 8, 11b, 11c, 11e, 11f, 11g, 11i; Tracy Dep. 11, 17, 18, 29, 42-45, 47; Tr. 543-45. All of this information provided for a reasonable royalty of $100,000 based upon the development costs and value of the trade secrets by Grimes and



Chicago Roll.

Furthermore, the Seventh Circuit has ruled with regards to determining damages:

> While damages cannot be based on pure speculation or guesswork, they also need not be proven with the certainty of calculus. And where, as here, the uncertainty of the damages stems from the defendants' illegal conduct, the defendants should not benefit from the uncertainty they created: Speculation has its place in estimating damages, and doubts should be resolved against the wrongdoer.

*BE&K Construction Co. v. Will & Grundy Counties Building Trades Council, AFL-CIO*, 156 F.3d 756, 770 (7th Cir. 1998) (internal quotations and citations omitted). Therefore, it was reasonable for this Court to look to development costs and the value of the data to derive a reasonable royalty. Additionally, a defendant whose own misconduct creates the uncertainty cannot complain the damages are too speculative, conjectural, or cannot be measured with exactness and precision. *Mid-America Tablewares, Inc. v. MOGI Trading Co., LTD.*, 100 F.3d 1353, 1365 (7th Cir. 1996); *Bob Willow Motors, Inc. v. General Motors Corp.*, 872 F.2d 788, 799 (7th Cir. 1989). Thus, Defendants, as the wrongdoers, cannot complain about the lack of certainty in the amount of damages because their wrongdoing created the uncertainty.

This Court also stands by its ruling with regards to the award and amount of damages against Grimes for the conversion, breach of duty of loyalty claim, and breach of contract claim. *RKI, Inc.*, 177 F.Supp.2d 879-81.

### 2. Punitive Damages

This Court awarded punitive damages to Roll-Kraft in the amount of $150,000 and

also awarded Roll-Kraft attorney's fees. *Id.* at 880-81. This Court stands by its ruling of punitive damages on the ITSA, conversion, breach of duty of loyalty, and tortious interference with contract claims.

Although neither party brought this to the Court's attention, this Court recognizes that Illinois law does not allow punitive damages on the breach of contract claim. *Morrow v. L.A. Goldschmidt Assoc., Inc.*, 492 N.E.2d 181, 183 (Ill. 1986). Therefore, as a matter of law, Grimes is entitled to a modification of the damages award; however, this does not change the amount of the award because the same punitive damages were awarded on other claims.

Chicago Roll contends Roll-Kraft is not entitled to exemplary damages and attorney's fees. This Court awarded $150,000 in exemplary damages to Roll-Kraft and against Defendants for their willful and malicious misappropriation of trade secrets and their attempted cover-up and for tortious interference with contract. The Court also awarded attorney's fees to Roll-Kraft based on the same standard.

The ITSA sections four and five authorize exemplary damages and attorney's fees "if willful and malicious misappropriation exists." 765 ILCS 1065/4-5. Willful and intentional misappropriation includes an "intentional misappropriation as well as a misappropriation resulting from the conscious disregard of the rights of another." *Mangren Research and Development Corp. v. National Chemical Co., Inc.*, 87 F.3d 937, 946 (7th Cir. 1996). In *Mangren*, the Seventh Circuit affirmed the jury's finding that defendants' corporate officer was unconcerned about employee's indications that using misappropriated mold release agent



might be "troublesome" and would likely prompt a lawsuit. *Id.* Defendants' corporate officer, in *Mangren*, was also aware of his employee's previous employment by his competitor and his exposure to the mold release agent. *Id.* Therefore, the Seventh Circuit affirmed the jury's award of exemplary damages. *Id.*

Likewise, as discussed *supra* and in the Opinion paragraphs 19-21 and 28-29, Chicago Roll was aware of Grimes' employment contract with Roll-Kraft and assigned him to the same territory he developed for Roll-Kraft. PX 7, 8; *RKI, Inc.*, 177 F.Supp.2d at 867-68. Additionally, Chicago Roll and Grimes misappropriated Roll-Kraft's trade secrets and attempted a cover-up as discussed more fully *supra* and in the Opinion paragraphs 11-16, 24-32, 36-44, 62-75. *Id.* at 865-867, 868-871, 873-877. This type of activity meets the test for willful and malicious misappropriation, as it is both an intentional misappropriation and a conscious disregard of the rights of another.

Chicago Roll also contests the award of punitive damages based on the tortious interference with contract claim stating evidence was lacking 1) in the areas of willful, intentional, or malicious conduct on the part of Chicago Roll and 2) of Chicago Roll's corporate complicity of Grimes' wrongdoing. This Court addressed both issues in the Opinion and earlier in this opinion and found Chicago Roll acted willfully, intentionally, and maliciously and found corporate complicity by Chicago Roll of Grimes' wrongdoing. *Id.* at 871, 878-79.

Chicago Roll also argues a lack of actual damages legally precludes exemplary

damages. Chicago Roll is correct that in Illinois, "punitive damages may not be awarded in the absence of compensatory damages." *Kemner v. Monsanto Co.*, 576 N.E.2d 1146, 1153 (Ill. App. Ct. 1991). However, that is not the case here. This Court awarded compensatory damages in the amount of $100,000 against Chicago Roll for violating the ITSA and for tortious interference with contract.

*Kemner* is also cited by Chicago Roll for the proposition that exemplary damages cannot be awarded under the ITSA for misappropriation unless the corporation ordered, participated in, or ratified the wrongful conduct by an employee. *Id.* at 203-5. Confusion exists amongst the parties on what the current state of the law in Illinois is on this issue based on *Jannotta v. Subway Sandwich Shops, Inc.*, 125 F.3d 503 (7th Cir. 1997); *Deal v. Byford*, 537 N.E.2d 267 (Ill. 1989); and *Kemner*, 576 N.E.2d 1146.

In *Deal*, the Illinois Supreme Court held it is not necessary for an entity to act through an officer in order to be held liable for punitive damages. 537 N.E.2d at 273. *Kemner* acknowledged this change in law, but held the state of the law at the time the case went to the jury, 19 months before *Deal* was decided, controlled its review of the jury instructions in the case. 576 N.E.2d at 1158-59. Regardless, in *Jannotta* the court held punitive damages can be awarded against a corporation for the acts of its agents or employees if the employee was acting in a managerial capacity or the corporation authorized or ratified the employee's acts. 125 F.3d at 513.

In this case, Chicago Roll's vice president of sales, Robert Manos, was an officer of

Chicago Roll. This Court already found, *supra* and in the Opinion paragraphs 42, 71-75, that Manos viewed Roll-Kraft's trade secrets, had them on his computer, and then covered them up, meaning, an officer of Chicago Roll misappropriated the data and ratified or approved Grimes' taking of the data by receiving it. *RKI, Inc.*, 177 F.Supp.2d at 870, 875-77. Manos also sent Grimes the October 5, 2001 letter indicating Grimes would be responsible for the same territory he was developing while at Roll-Kraft. PX 7.

Punitive damages are intended to punish the wrongdoer and to deter the wrongdoer and others from committing similar acts in the future. *Deal*, 537 N.E.2d at 272. Therefore, this Court found it necessary to discourage Defendants from engaging in such serious misconduct and from participating in a deliberate attempt to coverup their wrongdoing. This Court's award of $150,000 in punitive damages and award of attorney's fees to Roll-Kraft stands.

## CONCLUSION

For the reasons set forth in this opinion, this Court **denies Defendants' Motions for New Trial or to Alter or Amend Judgment Pursuant to Federal Rule of Civil Procedure 59 and 52(b) and, furthermore, upholds its prior ruling in this case, except that the Court vacates its award of punitive damages on the breach of contract claim in count four against Steven Grimes. This does not require a change in the Judgment Order because Grimes is still liable for punitive damages under counts one, two, and three.**

**SO ORDERED THIS 2nd DAY OF MAY, 2002.**

_Morton Denlow_
**MORTON DENLOW**
**United States Magistrate Judge**

**Copies Mailed to:**

Michael J. Ranallo
Mark L. Shapiro
Sean Nash
Holland & Knight LLP
55 West Monroe, Suite 800
Chicago, Illinois 60603
(312) 263-3600

Steven H. Jesser
790 Frontage Road, Suite 110
Northfield, IL 60093
(847) 424-0200

Attorney for Defendant Steven Grimes

Daniel M. Purdom
Frank Marsico
Hinshaw & Culbertson
4343 Commerce Court, Suite 415
Lisle, IL 60532
(630) 505-0010

Attorneys for Plaintiff

Attorneys for Defendant Chicago Roll